**AFFIDAVIT OF SPECIAL AGENT BRENDAN DONLAN IN SUPPORT OF
APPLICATIONS FOR SEIZURE WARRANTS**

I, Brendan M. Donlan, having been duly sworn, do hereby depose and state as follows:

1.       I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been

so employed since 2009. I am currently assigned to the FBI's Boston Field Office and to the

Corporate and Securities Fraud group within that office.  My duties include the investigation of

violations of federal law, including investment fraud, money laundering, mail fraud, wire fraud,

and other financial crimes.  I received training at the FBI Academy in Quantico, Virginia in a

variety of investigative and legal matters.

**PURPOSE OF AFFIDAVIT**

2.       I submit this affidavit in support of applications for seizure warrants for the

following assets:

      a.   $46,000 in funds held in or on behalf of American Broadcast Employees Federal
          Credit Union prime share accoun ███4170, in the name of N██ L████ (the "4170
          Account (Savings)");

      b.   A 2020 Tesla Model 3, vehicle identification number 5YJ3E1EB4LF639020 (the
          "Tesla Model 3"); and

      c.   A 1972 Piper Aircraft, model number PA-28R-200 with serial number 28-R-
          7335039 (the "Piper Aircraft").

3.       This affidavit is based on my personal knowledge, information provided by other

law enforcement officers and government employees, information provided by bank personnel, and

my review of reports and other records.  This affidavit is not intended to set forth all of the

information that I have learned during this investigation but includes only the information necessary

to establish probable cause for the requested seizure warrants.

**AUTHORITY FOR SEIZURE**

4.      As set forth below, I submit that probable cause exists to believe that $46,000 in the 4170 Account (Savings), the Tesla Model 3, and the Piper Aircraft are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), because they are property, real or personal, which constitutes or are derived from proceeds traceable to a violation of a specified unlawful activity, specifically violations of 18 U.S.C. § 1341 (mail fraud).  Pursuant to 18 U.S.C. § 1961(1), as incorporated by 18 U.S.C. § 1956(7)(A), violations of 18 U.S.C. § 1341 are a specified unlawful activity.

5.      In addition, I submit that probable cause exists to believe that $46,000 in the 4170 Account (Savings), the Tesla Model 3, and the Piper Aircraft are subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) as property involved in an offense in a violation of 18 U.S.C. § 1957, or property traceable to such property, and is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

6.      This Court has authority to issue seizure warrants pursuant to 18 U.S.C. § 981(b)(2), which states that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure."   This Court also has authority to issue the requested seizure warrants pursuant to 21 U.S.C. § 853(f), as incorporated by both 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), which authorizes "the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant."

7.      Further, 18 U.S.C. § 984 allows the United States to seize for civil forfeiture identical property found in the same place where the "guilty" property has been kept.  *See United States v. All Funds Presently on Deposit at American Express Bank*, 832 F. Supp. 542, 556

(E.D.N.Y. 1993).  Thus, I am advised that, pursuant to 18 U.S.C. § 984(a)(1)(B), this affidavit need not demonstrate that $46,000 in the 4170 Account (Savings) are the particular monies involved in mail fraud, so long as the forfeiture is sought for other funds on deposit in that same account.

8.      Moreover, I am advised that the "fungibility" rule of Section 984(b) cannot reach back in time for an unlimited period but rather applies so long as the action to forfeit the property is commenced within one year from the date of the offense giving the basis for forfeiture.  *See United States v. $79,650 Seized from Bank of America account ending in -8247, in the name of Afework*, 2009 WL 331294, *3 (E.D. Va. Feb. 9, 2009).  Here, as described below, the dates of the offense giving rise to the seizure are within the one-year period.

9.      A restraining order, pursuant to 21 U.S.C. § 853(e), will not be sufficient to preserve the $46,000 in the 4170 Account (Savings) given the ease with which funds may move out of the accounts via wire transfer, electronic funds transfer, or otherwise, and despite best intentions, financial institutions cannot guarantee that money restrained, but not seized, will be available for forfeiture at a later time.  A restraining order, pursuant to 21 U.S.C. § 853(e), will also not be sufficient to preserve the Tesla Model 3 or the Piper Aircraft given the ease with which vehicles and aircraft can be moved, secreted, or transferred.

10.     This Court has jurisdiction to enter the requested seizure warrants in the District of Massachusetts because a forfeiture action may be filed in this District.  *See* 28 U.S.C. § 1355 ("A forfeiture action or proceeding may be brought in— (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or (B) any other district where venue for the forfeiture action or proceeding is specifically provided for …"); Fed. R. Crim. P. 41(b) (magistrate judge has authority to issue a warrant to seize property "located in the district"

and, "in any district where activities related to the crime may have occurred[, to] issue a warrant for property that is located outside the jurisdiction of any state or district….").

## PROBABLE CAUSE

11.     As set forth in more detail below, and in the Indictment, *see* 22-cr-10038-IT, Dkt. 13 (a copy attached hereto at Exhibit A), which is incorporated herein by reference, a Federal Grand Jury charged Ariel Legassa ("LEGASSA") with seven counts of mail fraud, in violation of 18 U.S.C. 1341, and three counts of money laundering, in violation of 18 U.S.C. 1957.[1]  The Federal Grand Jury found probable cause that from approximately December 2020 to January 2022, LEGASSA devised a scheme to fraudulently obtain $575,500 from his former employer, New England Sports Network ("NESN"), located in Watertown, Massachusetts.

12.     During that time, LEGASSA was employed as Vice President of Digital at NESN. He was responsible for sourcing, supervising, and approving payments to vendors working on digital media projects for NESN.

13.     As LEGASSA negotiated a legitimate contract with a vendor, Alley NY, to provide web development services for NESN, LEGASSA simultaneously created a fictitious business, Alley CT, that he then used to receive fraudulent payments from NESN.  During the pendency of the contract between Alley NY and NESN, in addition to approving legitimate invoices from Alley NY, LEGASSA created and approved several fake invoices from Alley CT.  LEGASSA

---

[1] There is also a civil action involving LEGASSA arising from the same conduct charged in the Indictment.  *See New England Sports Network, L.P. v. Ariel Legassa et al.* (22-cv-10024-ADB). In the civil case, on January 19, 2022, the Court ordered that any funds remaining in an American Broadcast Employees Federal Credit Union account held in the name of LEGASSA or N█ L████ be attached and held pending a further order of the Court. *Dkt. 14.*  On February 22, 2022, LEGASSA and N███ L████ filed a motion to dissolve the attachment. *Dkt. 26.*  This motion is currently pending.

misrepresented to NESN that Alley CT was part of the legitimate contract involving Alley NY. Instead, Alley CT was a company that LEGASSA created, controlled, and that had no real business purpose. In all, NESN paid Alley CT $575,500. LEGASSA deposited these funds into an account at Santander Bank in the name of Alley CT that he controlled (the "Santander Account").

14. Between approximately April 1, 2021 and November 23, 2021, NESN mailed seven checks totaling $575,500 to Alley CT[2]:

| Approximate Date | Check Amount |
|------------------|--------------|
| 4/1/21 | $110,000 |
| 4/27/21 | $135,000 |
| 6/15/21 | $85,000 |
| 6/24/21 | $100,000 |
| 8/24/21 | $48,500 |
| 10/5/21 | $48,500 |
| 11/23/21 | $48,500 |

15. All these checks were deposited into the Santander Account.

16. In connection with the investigation, I have reviewed financial records from the Santander Account. LEGASSA opened the account in February 2021. Between February 2021 and January 2022, the only deposits into the Santander Account were the NESN checks issued to Alley CT, a $100 account opening deposit, and a $4,000 deposit on May 20, 2021.

17. LEGASSA transferred a large portion of the fraudulently obtained funds from the Santander Account into other bank accounts that also appear to have been under his control. He

---

[2] The details of these payments are set forth in more detail in the Indictment, including emails with invoices sent by LEGASSA to a NESN accounting employee that resulted in NESN, located in Massachusetts, mailing checks to Alley CT. *See, e.g.*, Indictment ¶¶ 11-16.

also spent the fraudulently obtained funds on personal expenses, such as paying off a car loan, an airplane loan, and credit card expenses.

### The 4170 Account

18.     Between April 16, 2021 and December 7, 2021, LEGASSA sent five wire transfers totaling approximately $156,000 from the Santander Account to an account in his and his wife's name at the American Broadcast Employees Federal Credit Union (the "750 Account"). The 750 Account as well as the 4170 Account had a "Prime Share," or savings account, and a "Basic Share Draft," or checking account. "Ariel Legassa" was listed as the beneficiary of these five wire transfers and all the wires were sent to the 750 Account (Checking).

19.     As detailed below, LEGASSA then transferred some of the funds to the 750 Account (Savings) and also spent some of the funds on loan payments.

> a.     On or about April 16, 2021, LEGASSA wired $26,000 from the Santander Account to the 750 Account (Checking). That same day, LEGASSA made a $12,856.53 payment on a car loan associated with the 4170 Account. More specifically, the payment satisfied the outstanding loan balance on a 2015 BMW I3 Series. Additionally, LEGASSA made a $9,232.21 payment on an additional car loan associated with the 4170 Account. More specifically, the payment satisfied the outstanding loan balance on a 2013 Subaru Outback-6 CYL.

> b.     On or about May 11, 2021, LEGASSA wired $60,000 from the Santander Account to the 750 Account (Checking). That same day, LEGASSA made the following payments: (1) a $12,911.16 payment and $9,134.92 payment to satisfy two outstanding loans associated with the 4170 Account, (2) a $12,543.05 payment to satisfy an outstanding loan associated with the 750 Account, (3) a $20,000

payment towards the balance on a credit card held by N███ L█████ at American Broadcast Employees Federal Credit Union, and (4) a $4,300 transfer to the 4170 Account (Checking).

c.       On or about July 12, 2021, LEGASSA wired $45,000 from the Santander Account to the 750 Account (Checking).  That same day, he transferred $18,000 from 750 Account (Checking) to the 750 Account (Savings).  On or about July 16, 2021, LEGASSA also transferred $10,000 from the 750 Account (Checking) to the 750 Account (Savings).  On or about July 30, 2021, LEGASSA transferred $6,000 from the 750 Account (Checking) to the 750 Account (Savings).[3]

d.       On or about November 4, 2021, LEGASSA wired $8,500 from the Santander Account to the 750 Account (Checking).  That same day, he transferred $12,000 from the 750 Account (Checking) to the 750 Account (Savings).

e.       On or about December 7, 2021, LEGASSA wired $17,000 from the Santander Account to the 750 Account (Checking).  On or about December 9, 2021, LEGASSA made a $14,000 payment towards the balance on a credit card held by N███ L█████ at the American Broadcast Employees Federal Credit Union.

20.       As reflected above, between approximately July 12, 2021 and December 7, 2021, shortly after receiving funds from the Santander Account into the 750 Account (Checking),

---

[3] LEGASSA appears to have routinely received direct deposit salary payments from NESN into the 750 Account (Checking).  On or about July 16, 2021, LEGASSA received a direct deposit salary payment of $6,934.93 from NESN into the 750 Account (Checking).  This brought the account balance to $34,169.09.  On or about July 30, 2021, LEGASSA received a direct deposit salary payment of $6,967.50 into the 750 Account (Checking).  This brought the account balance to $28,575.30.   Each one of these salary direct deposits took place prior to the transfer from the 750 Account (Checking) to the 750 Account (Savings) described above.

LEGASSA transferred a total of $46,000 to the 750 Account (Savings). Based on the above transaction history as reflected in bank records, probable cause exists to believe that $46,000 is proceeds traceable to mail fraud and/or an offense in violation of 18 U.S.C. § 1957.

21.     On or about July 1, 2021, the 750 Account (Savings) had a balance of $7,472.45. On or about July 31, 2021, the 750 Account (Savings) account had a balance of $47,472.45. From approximately July 31, 2021 through January 10, 2022, at no point, did the 750 Account (Savings) account drop below $47,000.

22.     On or about January 1, 2022, the 750 Account (Savings) account had a balance of $108,166.82.

23.     On January 6, 2022, NESN fired LEGASSA. Prior to terminating LEGASSA's employment, NESN confronted LEGASSA about the suspected fraudulent invoices in the name of Alley CT.

24.     On or about January 10, 2022, LEGASSA transferred $79,625.96 from the 750 Account (Savings) to the 4170 Account (Savings). Prior to the transfer, on or about January 5, 2022, the 4170 Account (Savings) held $1,757.91.

25.     On or about January 20, 2022, the American Broadcast Employees Federal Credit Union froze the then-balance of the 4170 Account. At that time, bank records indicate that the 4170 Account (Savings) had a balance of approximately $64,469.52 and the 4170 Account (Checking) had a balance of approximately $12,767.25.

26.     Based on the investigation, I understand that the American Broadcast Employees Federal Credit Union allowed N███ L██████ to make subsequent deposits in the 4170 Account and to only withdraw funds up to the amount deposited post the January 20, 2022 freeze.

27.     Based on the transaction history described above, there is probable cause to believe that $46,000 of the total funds remaining in the 4170 Account (Savings) are proceeds traceable to mail fraud, in violation of 18 U.S.C. § 1341, and are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  These funds ($46,000) represent the amount of money that LEGASSA transferred from the Santander Account to the 750 Account and then, after learning of his termination from NESN, represent a portion of the total funds that he transferred to 4170 Account (Savings) and that remain in that account.  Further, because these transactions occurred within the last year, the provisions of 18 U.S.C. § 984 apply.  In addition, there is probable cause to believe that $46,000 in the 4170 Account (Savings) is property involved in an offense in violation of 18 U.S.C. § 1957, or property traceable to such property, and is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

### *The Tesla Model 3*

28.     On or about April 8, 2021, LEGASSA deposited the first fraudulently obtained check from NESN into the Santander Account.  The check totaled $110,000.

29.     On April 16, 2021, the balance of the Santander Account was $110,100.

30.     On April 16, 2021, LEGASSA obtained an "Official Check" from Santander for $49,777.03 to pay off an auto loan for the Tesla Model 3 with Wells Fargo Bank.

31.     I have reviewed records from Wells Fargo Bank associated with this auto loan.  On or about March 13, 2020, LEGASSA purchased the Tesla Model 3.  LEGASSA is listed as the "buyer" and his wife, N███ L█████, is listed as the "co-buyer."  The vehicle is registered to LEGASSA at his home address in Burlington, Connecticut.

32.     At the time of purchase, LEGASSA made an initial down-payment of $3,536.98 and agreed to finance the remaining payments.  LEGASSA agreed to make monthly payments of

$966.25 over the next 72 months, which totaled $69,570.

33.    As of April 16, 2021, the remaining principal balance on the Tesla Model 3 amounted to approximately $49,589.56.  LEGASSA used the fraudulently obtained funds from NESN to pay off the balance of the loan.

34.    Therefore, there is probable cause to believe that at least $49,777.03 of the purchase price of the Tesla Model 3 is traceable to proceeds of mail fraud, in violation of 18 U.S.C. § 1341, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  In addition, as a monetary transaction involving criminally derived property of a value greater than $10,000, there is probable cause to believe that the Tesla Model 3 is property involved in an offense in violation of 18 U.S.C. § 1957, or property traceable to such property, and is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

### The Piper Aircraft

35.    As noted above, on or about April 8, 2021, LEGASSA deposited the first fraudulently obtained check from NESN into the Santander Account.  The check totaled $110,000. The balance of the Santander Account on April 16, 2021 was $110,100.

36.    On April 16, 2021, LEGASSA obtained an "Official Check" from Santander for $26,621.67 to pay off a financing loan for the Piper Aircraft with Tompkins Mahopac Bank.

37.    I have reviewed records from Tompkins Mahopac Bank associated with this aircraft loan.  On or about May 20, 2020, LEGASSA purchased the Piper Aircraft.  The plane is registered to LEGASSA at his home address in Burlington, Connecticut.

38.    LEGASSA purchased the Piper Aircraft for $62,000.  He made a down payment of $32,000 and financed the remaining $30,000.

39.    On or about April 16, 2021, LEGASSA, using the fraudulently obtained funds from

10

NESN deposited into the Santander Account, made a $26,621.67 payment to satisfy the balance of the loan on the Piper Aircraft.

40.     Therefore, there is probable cause to believe that at least $26,621.67 of the purchase price of the Piper Aircraft is traceable to proceeds of mail fraud, in violation of 18 U.S.C. § 1341, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  In addition, as a monetary transaction involving criminally derived property of a value greater than $10,000, there is probable cause to believe that the Piper Aircraft is property involved in an offense in violation of 18 U.S.C. § 1957, or property traceable to such property, and is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

## CONCLUSION

41.     Based on the foregoing, probable cause exists that $46,000 in the 4170 Account (Savings), the Tesla Model 3, and the Piper Aircraft contain proceeds traceable to mail fraud and are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  There also is probable cause to believe that $46,000 in the 4170 Account (Savings), the Tesla Model 3, and the Piper Aircraft is property involved in an offense in violation of 18 U.S.C. § 1957, or property traceable to such property, and is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

Sworn to under the pains and penalties of perjury.

Brendan Donlan
Brendan Donlan
Special Agent
Federal Bureau of Investigation

22-4113 to 22-4115

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1  on March 29, 2022.

10:24 a.m.

Honorable David H. Hennessy
United Sates Magistrate Judge